NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DAVID COTTRELL,

          Plaintiff-Appellee,

  v.

AT&T INC.; et al.,

          Defendants-Appellants.

No.   20-16162

D.C. No. 3:19-cv-07672-JCS

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Argued and Submitted June 8, 2021
Submission Vacated June 15, 2021
Resubmitted October 7, 2021
Seattle, Washington

Before: GILMAN,** GOULD, and MILLER, Circuit Judges.

David Cottrell brought this putative class action asserting claims under

California law against AT&T Inc. and associated companies (collectively,

"AT&T") based on his allegations that AT&T improperly charged its customers

---

     * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

     ** The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

for DIRECTV Now accounts without authorization. AT&T now appeals the district court's denial of its motion to compel arbitration. We have jurisdiction under 9 U.S.C. § 16(a)(1)(C). Reviewing the district court's order de novo, *Hodges v. Comcast Cable Communications, LLC*, 12 F.4th 1108, 1113 (9th Cir. 2021), we reverse and remand with instructions to grant the motion.

Under California law, a contractual provision purporting to waive the right to seek public injunctive relief in any forum is unenforceable. *McGill v. Citibank, N.A.*, 393 P.3d 85, 94 (Cal. 2017). AT&T's contract requires the parties "to arbitrate all disputes and claims" and then limits the award of any injunctive relief to "the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." By precluding injunctive relief benefitting anyone other than the individual claimant, the contract prevents Cottrell from seeking public injunctive relief in any forum. Therefore, if Cottrell's requested relief qualifies as public injunctive relief, AT&T may not compel him to arbitrate. *See id.*

The district court determined that Cottrell sought public injunctive relief, so it declined to compel arbitration. Whatever we might think of that conclusion if we were to make our own assessment of California law, it is foreclosed by our intervening decision in *Hodges*. In that case, Hodges argued that Comcast had violated the statutory privacy rights of its residential cable subscribers and that the

2

injunction he requested—which would have prevented future violations—constituted public injunctive relief. *Hodges*, 12 F.4th at 1111. We rejected that argument, holding that to qualify as public injunctive relief, an injunction must be "for the benefit of the general public as a whole, as opposed to a particular class of persons." *Id.* at 1114–15; *see McGill*, 393 P.3d at 94. We concluded that the requested injunction was private relief because it would "benefit only Comcast 'cable subscribers.'" *Hodges*, 12 F.4th at 1121. Although the injunction applied to Comcast's dealings with future customers and therefore could be said to benefit the general public in the form of those "persons *considering* entering into" a transaction with Comcast, that was insufficient to transform otherwise private relief into a public injunction. *Id.* at 1118. Instead, the "incidental benefit to the general public" was "not enough to classify that relief as non-waivable public injunctive relief." *Id.* (citing *McGill*, 393 P.3d at 89).

Cottrell's requested relief suffers from the same flaw. Cottrell seeks an injunction requiring AT&T "to provide an accounting of all monies obtained" through unauthorized accounts and services; to give customers "individualized notice" of the violations committed and of their legal rights; and to refrain from committing future violations of the California law by signing customers up for products or services without authorization. Cottrell asserts that those unlawful practices "may victimize any member of the public . . . who walks into" an AT&T

store, so this injunction primarily benefits the general public. That characterization elides an important distinction. As Cottrell admits, for AT&T to create an unauthorized account and violate California law, the victimized individual must first transact in some way with AT&T by providing payment and billing information. That is, the individual must become a customer.

The benefit of Cottrell's requested relief therefore would not primarily accrue to the general public. Rather, the beneficiaries of the injunction would be current and future AT&T customers—"a 'group of individuals similarly situated to'" Cottrell. *Hodges*, 12 F.4th at 1121 (quoting *McGill*, 393 P.3d at 90). Because "[t]here is simply no sense in which this relief could be said to *primarily* benefit the general public as a more diffuse whole," *id.*, Cottrell seeks private injunctive relief, the waiver of which is enforceable under *McGill*.

The district court suggested that the arbitration agreement's prohibition against public injunctions would make the agreement categorically unenforceable "even if Cottrell did not himself seek public injunctive relief." That argument, too, is foreclosed by *Hodges*, which rejected the proposition "that courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute." 12 F.4th at 1113.

**REVERSED and REMANDED.**

4